# 22-431

In The

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

⎯⎯⎯⎯⎯⎯∞⎯⎯⎯⎯⎯⎯

RAIZY FELBERBAUM, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

v.

MANDARICH LAW GROUP, LLP

*Defendants-Appellee.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE U.S. EASTERN DISTRICT OF NEW YORK (BROOKLYN)

NO. 19-cv-4249 (KAM)(VMS), HON. KIYO MATSUMOTO

## Brief for Plaintiff-Appellant

CRAIG B. SANDERS, ESQ.
SANDERS LAW GROUP
100 Garden City Plaza, Suite 500
Garden City, NY 11530
(516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................II

TABLE OF AUTHORITIES .............................................................III

STATEMENT REGARDING ORAL ARGUMENT ...........................VII

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF THE ISSUES.......................................................1

STATEMENT OF THE CASE............................................................7

SUMMARY OF THE ARGUMENT ..................................................17

STANDARD OF REVIEW ..............................................................19

ARGUMENT ..................................................................................22

  I.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT TO DEFENDANT ON PLAINTIFF'S "MEANINGFUL
      ATTORNEY INVOLVEMENT" CLAIM....................................22

  II.  THE DISTRICT COURT ERRED IN FINDING THAT
      DEFENDANT WAS NOT ACTING SOLELY AS A DEBT
      COLLECTOR IN SENDING THE LETTER .................................29

CONCLUSION AND PRAYER FOR RELIEF...................................30

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................32

CERTIFICATE OF SERVICE ........................................................33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*2132 Presidential Assets, LLC v. Carrasquillo*,
  39 Misc. 3d 756, 965 N.Y.S.2d 694 (Civ. Ct. 2013) ............................................27

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................20

*Avila v. Rubin*,
  84 F.3d 222 (7th Cir. 1996) ................................................................................25

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2004) ...............................................................................19

*Baldwin v. EMI Feist Catalog, Inc.*,
  805 F.3d 18 (2d Cir. 2015) .................................................................................19

*Bank of Am., Nat. Ass'n v. Brannon*,
  156 A.D.3d 1, 63 N.Y.S.3d 352 (2017).............................................................27

*Bitzko v. Weltman, Weinberg & Reis Co., LPA*,
  No. 117CV00458BKSDJS, 2019 WL 4602329 (N.D.N.Y. Sept. 23, 2019)........13

*Brady v. Town of Colchester*,
  863 F.2d 205 (2d Cir. 1988) ...............................................................................21

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) .............................19

*Chambers v. TRM Copy Centers Corp.*,
  43 F.3d 29 (2d Cir. 1994) ...................................................................................21

*Chertkova v. Conn. Gen'l Life Ins., Co.*,
  92 F.3d 81 (2d Cir. 1996) ...................................................................................20

*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir. 1993) ................................................................. 23, 24, 25

*Coach Leatherware Co. v. Ann Taylor, Inc*.,
  933 F.2d 162 (2d Cir. 1991) .................................................................20

*Deutsche Bank Nat. Tr. Co. v. Ramotar*,
  30 Misc. 3d 1208(A), 958 N.Y.S.2d 645 (Sup. Ct. 2011) ...................26

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
  834 F.2d 54 (2d Cir. 1987) ..................................................................20

*Gervais v. Riddle & Assocs., P.C*.,
  479 F. Supp. 2d 270 (D. Conn. 2007)...................................................25

*Goins v. Brandon*,
  367 F. Supp. 2d 240 (D. Conn. 2005)....................................................25

*Greco v. Trauner, Cohen & Thomas, L.L.P*.,
  412 F.3d 360 (2d Cir. 2005) ..................................................... 7, 13, 24

*Hochhauser v. Grossman & Karaszewski, PLLC*,
  No. 19CV2468ARRRML, 2020 WL 2042390 (E.D.N.Y. Apr. 28, 2020) ..........25

*IndyMac Fed. Bank, FSB v. Meisels*,
  37 Misc. 3d 1206(A), 961 N.Y.S.2d 358 (Sup. Ct. 2012)....................27

*Krezic v. Advanced Endodontics of Buffalo, PC*,
   No. 1:20-CV-1166, 2021 WL 663968 (W.D.N.Y. Feb. 19, 2021).....................25

*Kwong v. Bloomberg*,
  723 F.3d 160 (2d Cir. 2013) .................................................................19

*Luftig v. Sokoloff*,
   No. 13-CV-4313 FB VVP, 2015 WL 151463 (E.D.N.Y. Jan. 13, 2015).............25

*McNeil v. Aguilos*,
  831 F. Supp. 1079 (S.D.N.Y. 1993) .....................................................20

*Miller v. Upton, Cohen & Slamowitz*,
  687 F. Supp. 2d 86 (E.D.N.Y. 2009) ....................................................25

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003 ................................................................. 13, 23, 24

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
    No. 14-CV-7539 (MKB), 2016 WL 1274541 (E.D.N.Y. Mar. 31, 2016) .... 13, 25

*Nielsen v. Dickerson*,
    307 F.3d 623 (7th Cir. 2002) ............................................................... 25

*Onewest Bank, F.S.B. v. Drayton*,
    29 Misc. 3d 1021, 910 N.Y.S.2d 857 (Sup. Ct. 2010) ......................................... 26

*Onewest Bank, FSB v. Bernstein*,
    40 Misc. 3d 1222(A), 975 N.Y.S.2d 710 (Sup. Ct. 2013) .................................. 27

*Parker v. Mandarich Law Group, LLP*,
    No. 19-CV-6313, 2021 WL 2351177 (E.D.N.Y. June 9, 2021) .......................... 23

*Tolbert v. Smith*,
    790 F.3d 427 (2d Cir. 2015) ............................................................... 19

*United States v. Diebold, Inc.*,
    369 U.S. 654, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) ................ 20

*Victory v. Pataki*,
    814 F.3d 47 (2d Cir. 2016) ............................................................... 19

*Vincent v. The Money Store*,
    736 F.3d 88 (2d Cir. 2013) ............................................................... 22

*Viola v. Philips Med. SYS. of N. Am.*,
    42 F.3d 712 (2d Cir. 1994) ............................................................... 19

*Western World Ins. Co. v. Stack Oil, Inc.*,
    922 F.2d 118 (2d Cir. 1990) ............................................................... 20

*Zemeckis v. Glob. Credit & Collection Corp.*,
    679 F.3d 632 (7th Cir. 2012) ............................................................... 5

## Statutes

15 U.S.C.

§ 1692.....................................................................................................1
§ 1692e..................................................................................................22
§ 1692e (3) .............................................................................................2
§ 1692e(3) ...................................................................................... vii, 15
§ 1692k(d)..............................................................................................1
§ 1692e..................................................................................................22

28 U.S.C.

§ 1291....................................................................................................1
§ 1331....................................................................................................1

## Rules

Fed. R. Civ. P.

56(a)....................................................................................................19
56(c)....................................................................................................19
30(b)(6) .................................................................................................9

N.Y. Comp. Codes R. & Regs. tit. 22,

§ 202.27...............................................................................................28
§ 208.14-a ............................................................................................28

Fed. R. App. P.

32(a)(7)(B)...........................................................................................32
32(a)(7)(B)(iii) .....................................................................................32

## Other

Ariana Eunjung Cha, "OneWest Bank Employee: Not More Than 30 Seconds' to
    Sign Each Foreclosure Document," Washington Post, Sept. 30, 2010 ...............26
Stephanie Armour, "Mistakes Widespread on Foreclosures, Lawyers Say," USA
    Today, Sept. 27, 2010 ........................................................................26

## **STATEMENT REGARDING ORAL ARGUMENT**

Given the significance of the issues to be determined, Plaintiff-Appellant respectfully requests an opportunity to present oral argument to the Court. The instant appeal concerns the District Court's misconstruction and/or misapplication of the case law interpreting when an attorney is "meaningfully involved" in handling the collection of a consumer's account, such that a dunning letter may be considered to be "from an attorney" within the meaning of 15 U.S.C. § 1692e(3). For this reason, Plaintiff-Appellant believes that oral argument will aid the Court in deciding the instant appeal.

## JURISDICTIONAL STATEMENT

Plaintiff's action herein alleges claims for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*) (the "*FDCPA*"). Accordingly, the District Court had subject matter jurisdiction over the action below pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). The Clerk's Judgment in this case, following entry of an Order granting summary judgment to Defendant was entered on January 31, 2022. Plaintiff-Appellant filed her Notice of Appeal on March 2, 2022. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291 because the appeal is taken from a final judgment of the United States District Court for the Eastern District of New York.

## STATEMENT OF THE ISSUES

The instant appeal asks this Court to review a clear error of law which, if not reversed, will operate to deny countless litigants their proverbial day in court. The issue in this case is whether the District Court erred when it found that a collection letter was "from" an attorney within the meaning of the FDCPA as a matter of law, when the evidence shows that ninety-five percent (95%) of the overall tasks were either fully automated or performed by non-attorneys and that, according to Defendant's records, the two tasks performed by an attorney each took a minute. According to the District Court, this is not a question which should have been resolved by the jury.

1

In the case below, Plaintiff-Appellant Raizy Felberbaum ("*Plaintiff*" or "*Felberbaum*") argued that the collection letter sent to her by Defendant-Appellee Mandarich Law Group, LLP ("*Defendant*" or "*Mandarich*") falsely represented that the letter was "from an attorney" in violation of 15 U.S.C. § 1692e (3), because the letter was printed on Defendant's law firm letterhead, but that no attorney employed by Defendant had been meaningfully involved in the handling of Plaintiff's account. Plaintiff further argued that Defendant was acting solely in the capacity of a debt collector when it sent the letter and, in such an instance, precedent from this Court requires a disclaimer indicating the law firm's limited role in the collection process.

Defendant admitted that its letter did not feature the name of any individual attorney employed by the firm and was not signed by the putative author. Defendant nonetheless maintained that an attorney employed by the firm (Matthew Salyer) had been meaningfully involved in the collection process, and that it has policies and procedures in place, which are designed to assure meaningful involvement.

Discovery revealed that Defendant's claim of meaningful attorney involvement was highly suspect insofar as its "meaningful involvement protocols" allowed its attorneys to review up to three hundred (300) files a day and still be in compliance with the firm's policies. Discovery further revealed that Defendant did not know how much time was spent by the attorney assigned to review Plaintiff's account. This is (or should have been) a critical factor, insofar as an attorney would

need to work a ten (10) hour day—taking no breaks—spending only two (2) minutes reviewing each file to review 300 files in a day. It is difficult, if not impossible, to imagine that anything approaching "meaningful" could be performed by an attorney at that pace with that volume.

The evidence below further showed that Defendant's case management platform would, in fact, allow a letter to be sent without any file review at all, insofar as the user could merely "check all the boxes" and have a collection letter generated. As a result, Plaintiff moved for summary judgment on the grounds that Defendant did not (and could not) provide any evidence as to the amount of time spent on review of Plaintiff's account prior to sending the letter, and failed to state how much time the attorney in charge of Plaintiff's account spent on other matters on the singular day that he purportedly reviewed Plaintiff's account. Defendant moved for inverse relief.

The District Court denied Plaintiff's motion for summary judgment on the grounds that Plaintiff's reliance on Defendant's "Debtor History Report," which showed that the two tasks performed by attorney Salyer (which occurred within one minute of each other) was insufficient to overcome the vague and conclusory statements in Salyer's affidavit, which contended that Salyer spent the "appropriate amount of time" in reviewing Plaintiff's file. Upon so finding, the District Court granted Defendant's motion for summary judgment.

3

Prior to granting Defendant's motion, the District Court recognized precedent from this Court, which declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case.  Instead, this Court held that such inquiries are necessarily fact-specific, and will turn on things such as what information was reviewed, how much time was spent on that review, and whether any legal judgment was involved therewith.  Although the District Court recognized this precedent, it found no genuine dispute as to the degree of Salyer's purported involvement in reviewing Plaintiff's account prior to sending the letter, notwithstanding the fact that Defendant's own contemporaneously maintained account notes contradicted the self-serving affidavits proffered for the sole purpose of moving for summary judgment.

The District Court's decision was clearly erroneous, insofar as the evidence in the record showed that: (i) Salyer could not state how much time he spent on the review of Plaintiff's file; (ii) Defendant's "JST Collection Platform" would have allowed Salyer (or anyone else) to have generated the letter without any review whatsoever; (iii) Salyer could not (or would not) state the number of other matters on which he worked on the date in question; (iv) Salyer could not have possibly remembered this single individual account – a review of which took only minutes years earlier – from the thousands of accounts he had reviewed during his tenure; and (v) there was no evidence in the record to show that Salyer formed any opinion

concerning the matter. Under such circumstances, the District Court should have found that a reasonable jury could have found that Salyer's involvement in the review of Plaintiff's file was not sufficiently meaningful so as to run afoul of the FDCPA.

Unless the District Court's decision is reversed, it will open a Pandora's Box of uncertainty with respect to FDCPA litigation in this Circuit. More specifically, absent reversal, the precedent set would allow a District Court to replace its opinions of the evidence for the factual determinations of a jury. Respectfully, this schema would completely eviscerate the protections under § 1692e, since Courts from outside of this District have held that, even under the more rigorous "unsophisticated debtor" standard, that a District Court judge is not a reasonable proxy for the least sophisticated consumer. *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012)

Plaintiff therefore raises the following questions on appeal:

1. Does a dunning letter, sent on law firm letterhead imply that the letter was from an attorney?

2. Does a dunning letter, sent on law firm letterhead imply that an attorney was meaningfully involved in the handling of the account?

3. When a law firm is acting solely in its capacity as a debt collector, must a dunning letter contain a disclaimer advising the consumer of its limited role in the collection process?

4. Did the District Court err in holding that no reasonable jury could find that attorney Salyer was not "meaningfully involved" in the review of Plaintiff's account prior to the sending of the letter?

5.  Did the District Court err in holding that no reasonable jury could find that Defendant was not acting solely in the capacity of a debt collector when it sent the collection letter?

Plaintiff respectfully submits that the foregoing questions must be answered in the affirmative. As such, Plaintiff respectfully submits that this Court must reverse.

## STATEMENT OF THE CASE

Plaintiff commenced this action on July 23, 2019, following her receipt of a letter from Defendant, through which Defendant was seeking to collect a consumer debt (JA8-23)[1]. The Complaint alleges that Defendant violated the applicable provisions of the FDCPA in two interrelated ways. First, it was alleged that the letter falsely suggested that it was from an attorney when, in fact there was no meaningful attorney involvement on Defendant's part. Relatedly, it was alleged that Defendant was acting solely in the capacity of a debt collector when it sent the letter, but, the letter did not include the disclaimer required by this Court in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005).

Defendant sent a letter to Plaintiff dated March 13, 2019 (the "*Letter*"), claiming that she owed a debt in the amount of $7,329.85 to an entity identified as "Cavalry SPV I, LLC" (the "*alleged Debt*") (JA22-23). The Letter was the initial written communication sent by Defendant to Plaintiff, and was printed on the letterhead of the Mandarich Law Group, LLP, which identified Defendant as a law firm (JA22-23; JA91 at ¶¶ 11-14). The Letter caused Plaintiff to suffer significant consternation and anxiety insofar as the Letter was printed on law firm letterhead, and Plaintiff reasonably interpreted the Letter to mean that she was going to be sued on account of the alleged Debt (JA92 at ¶ 18; JA82). Plaintiff's concerns were

---

[1]     References to "JA[#]" refer to the Joint Appendix filed with the instant brief.

justified, to the extent that this Court has held that a letter sent on law firm letterhead, standing alone, *does* represent a level of attorney involvement to the least sophisticated consumer receiving such a letter. As a result, this Court has held that when a law firm is acting solely as a debt collector, any communications it sends to a consumer must feature a specific disclaimer indicating the law firm's limited role in the collection process. There was no such disclaimer here (JA22-23).

Defendant maintained that no such disclaimer was required, because an attorney employed by the firm purportedly was meaningfully involved in the handling of Plaintiff's account. (JA160 at ¶ 30) The evidence, however, did not support Defendant's contention. As a result, Plaintiff sought leave of the Court to file a motion for summary judgment, as did Defendant. (*Dkt. Nos.* 25-26). Both requests were granted.

In moving for summary judgment, Plaintiff argued that the record was bereft of any proof that an attorney employed by Defendant had been meaningfully involved in the handling of Plaintiff's account. (*Dkt. No*. 34-1). Instead, the evidence demonstrated that Defendant was paying lip service to the notion of attorney meaningful involvement by having attorneys "robo-sign" (or, in this case, check boxes) in its computer system 300 cases per day,[2] without any recordation of

---

[2] See Defendant's "Attorney Meaningful Involvement Procedure" at ¶ 2.2 ("Review Limits") (JA127).

the attorney's review and/or formation of a legal opinion.[3]  As such, the evidence demonstrated that Defendant was acting solely as a debt collector at the time it sent the Letter.

More specifically, Plaintiff argued that Defendant's Rule 30(b)(6) witness, Claire Whitlatch ("*Whitlatch*") testified that the individual who reviewed Plaintiff's account was Mathew Salyer ("Salyer"), an attorney admitted to practice law in Ohio, but not in New York (JA87 at ¶ 23; JA97 at ¶ 3-23; JA108 at ¶ 25; JA115 at ¶ 2). Whitlatch testified that Salyer purportedly reviewed the media provided by Defendant's client, however, she could not speak to the authenticity or veracity of any such documents (JA62 at lines 1-3).  Defendant also provided its "Debtor History Report," that being Defendant's account notes for Plaintiff's file (JA78-80; JA126-127).  There were a total of thirty-nine (39) entries on Plaintiff's Debtor History Report leading up to the date of the sending of the Letter, and Whitlatch explained that thirty-seven of those entries were either: (i) fully automated processes; (ii) performed by non-attorneys; or (iii) were entirely ministerial (JA62-69; JA78-80).

Only two of the tasks were attributable to Salyer, were devoid of any detail, and occurred within one minute of each other (JA80).[4]  Although Whitlatch testified

---

[3]     See Debtor History Report showing the two tasks performed by Salyer (Oper. "MSS") as being "Review Pass Auto Add_ and "Review AR_00INITIAL Passed." (JA80)

[4]     See FN3.

that that the first task triggered the posting of the second, she could not or would not state how much time Salyer purportedly spent on review (JA94 at ¶ 24); JA70 at 2-9). Further, Whitlatch testified that Salyer's review (if any) of Plaintiff's account and request for the Letter to be issued occurred through the "JST Collection Platform," Defendant's case management software (JA253 at FN8). Although Whitlatch stated that the JST Collection Platform was "designed" to assure that a collection letter would not be sent unless the requisite "meaningful review" has taken place, she nonetheless admitted that there is no governor on the software, and that a user could bypass the protocols by merely "checking the boxes," without performing any file review, meaningful or otherwise (JA59 at 4-16; JA94 at ¶ 26) (admitting that Mandarich's software does not govern the minimum amount of time required for an attorney to complete each required task when reviewing a debtor's account)). Further to this point, the pace at which Mandarich was seeking its attorneys to operate (300 cases per day)[5] foreclosed any possibility of a meaningful review or involvement.

In opposing Plaintiff's motion and moving for inverse relief, Defendant relied on *inter alia,* an Affidavit from Salyer (JA115-121). In defending the propriety and/or sufficiency of his review, Salyer stated that he reviewed the results of the automated scrubs performed by Defendant's software programs, as well as the

---

[5]     JA127.

"media" provided by Defendant's client, which consisted of a "sale file" and an unspecified number of account statements (JA115 at ¶ 17-19).

In response, Plaintiff argued that such review was not meaningful, insofar as the media identified by Salyer contained only the most basic information about Plaintiff and that such review has been held to be insufficient by this Court. (*Dkt. No.* 31 at p. 11).[6] Plaintiff further argued that Salyer's declaration was deficient to the extent that he could not state the amount of time he spent on such review (JA119 at ¶¶ 20-21). In an attempt to defend his position, Salyer stated that he does not keep track of his time, saying that: "in the area of creditor's rights, it is not typical that attorneys maintain billable time records on particular files because compensation is on a contingency basis" (JA119 at ¶ 24). Plaintiff argued that this was a critical failure, insofar as this Court has held that the most relevant factor in determining whether an attorney has "meaningfully reviewed" a file is the amount of time that the attorney spent on such review. Here, there were no notes created by Salyer concerning the account. In fact, there were no indications that Salyer did anything beyond checking boxes on the computer. Because of this, Plaintiff further argued that Salyer's review was not meaningful, to the extent that his Affidavit showed that Salyer did not form any "opinion" about the account (JA115-121). Defendant's

---

[6]     Arguing that this Court has held that "a mere review of basic information such as name, social security number, address, telephone number, account number and alleged balance due alone is not the exercise of professional judgment needed concerning the existence of a valid debt before sending a collection letter" (citing *Miller.* 321 F.3d at 304).

Debtor history Report further shows that the entries over the following two (2) days were all automated processes, and that there are no entries after March 15, 2019, two days after the Letter was printed (JA78-80).

In considering the parties' competing motions for summary judgment, the District Court articulated the proper standard, that:

> "A violation under the FDCPA requires that: (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements."

(JA247)

The District Court then found that the parties did not dispute that the first two elements of Plaintiff's FDCPA claims had been met, *to wit*: (1) that Plaintiff is a consumer who allegedly owes a debt; and (2) that Mandarich is a debt collector under the FDCPA (JA247-248). Therefore, the District Court held that the only question before it was whether Defendant engaged in any act or omission in violation of the FDCPA (JA248). In performing this analysis, the District Court properly recognized that "in deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party" (JA246). The District Court then observed that "the Collection Letter is printed on a law firm letterhead and contains no disclaimer regarding the lack of attorney involvement in the collection of Plaintiff's debt" (JA255). Thus, under Second Circuit precedent,

12

the District Court properly found that "the Collection Letter, by virtue of its Mandarich letterhead, represents 'a level of attorney involvement to the debtor receiving the letter'." (JA255) (citing *Greco, supra*, 412 F.3d at 364); see also *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 117CV00458BKSDJS, 2019 WL 4602329, at *4 (N.D.N.Y. Sept. 23, 2019) (same)).

Upon such observation, the District Court then stated that "the open question is whether an attorney was meaningfully involved in the collection process." (JA255 (citing *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-cv-7539(MKB), 2016 WL 1274541, at *16 (E.D.N.Y. Mar. 31, 2016)). In performing this analysis, the District Court properly found that "the analysis turns on, among other things, 'precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters'." (JA256) (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ("*Miller I*")).

Notwithstanding the District Court's recognition of the operative question and proper standard(s) of review, the District Court accepted Salyer's vague and conclusory attestations as to the scope of his purported review to be sufficient. In so doing, the District Court rejected Plaintiff's observations that Defendant's Debtor History Report demonstrated that Salyer spent only two minutes reviewing the file. Instead, despite the documentary evidence to the contrary, the Court held

13

"[Plaintiff's] interpretation of the Debtor History Report … that Salyer spent no more than [one] minute in reviewing Plaintiff's account" to be "inaccurate, unsupported, and insufficient to create a material factual dispute." (JA259).[7] Continuing, the District Court held that:

> "Plaintiff's arguments that Mandarich cannot show the precise amount of time that Salyer spent on Plaintiff's file because he did not keep contemporaneous time records, and that an attorney, in theory, could simply check the boxes on the JST Collection Platform to generate a collection letter without performing any review, are not evidence. Thus, there is no genuine factual dispute regarding the statements in the Salyer Affidavit that, as an attorney at Mandarich, he spent the time that he believed was appropriate and necessary to review the Felberbaum Account documents."

(JA260)

Upon making this finding, the District Court similarly held that Defendant was not acting solely in the capacity of a debt collector and, therefore, no *Greco* disclaimer was required, because it had separately determined that there was meaningful attorney involvement (JA268). The Court then granted summary judgment to Defendant on Counts I and II of the Complaint[8] and denied Plaintiff's motion for summary judgment in its entirety. The District Court reached this conclusion despite having recognized that "the Second Circuit declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has

---

[7]     Compare with Defendant's contemporaneously maintained account notes (JA80), which show two (2) tasks performed by Salyer, both at 10:33a on 3/13/19.

[8]     Counts I and II were the only claims before the Court, insofar as Plaintiff voluntarily dismissed Count III of the Complaint.

occurred in a given case" and that the "analysis turns on, among other things, 'precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters'" (JA255-256) all of which are classic jury questions.

The District Court's decision was clearly erroneous for a variety of reasons. By way of example, despite recognizing that the most critical element for determining whether an attorney has been "meaningfully involved" in the collection process for purposes of evaluating a claim under § 1692e(3) is the amount of time the attorney spent on review of the file, the District Court accepted Defendant's vague and conclusory representations that the amount of time spent by Salyer in his review of Plaintiff's file was all that was necessary, despite Defendant's inability (or refusal) to quantify same and the fact that Defendant's own evidence stated to the contrary; two minutes per file (reviewing 300 files per day) cannot be meaningful under any circumstance.

In addition to the foregoing, the District Court's conclusion—that Defendant was not acting solely in the capacity of a debt collector—is similarly erroneous. That is because the evidence before the District Court, when taken as a whole, unequivocally showed that Defendant did nothing more than send a collection letter and did not form any opinion as to what next steps would be taken if the sending of a collection letter did not garner a response.

15

To illustrate this point, Defendant's Debtor History Report shows that the account was placed with Defendant on March 7, 2019, and that the first thirty-seven (37) tasks were either fully automated, were performed by non-attorneys, or were otherwise ministerial. (JA78-80) Further, the Salyer Affidavit fails to state that Salyer formed any opinion other than that the Letter should be sent. (JA115-121). The Debtor History Report then shows no attorney activity after March 15, 2019, a date two (2) days after the Letter was sent. (JA80). In fact, the Debtor History Report shows no activity whatsoever after March 15, 2019. (Id.).

Perhaps most illustratively is the fact that the Letter itself does not indicate that it was prepared or sent by Salyer. (JA22-23). Indeed, the Letter does not feature the name of any attorney employed by the firm, either in the header, footer, or in the body of the Letter. (Id.). Instead, the Letter directed Plaintiff to contact "Collections Supervisor, John Licata," if she had any questions about the letter or wished to discuss payment arrangements. (Id.). While the Letter included a signature block, it was not signed by Salyer or any other attorney employed by the Firm. The signature block was blank. (Id.).

Under these circumstances, the District Court should have found that a reasonable jury could have found that Salyer's review of the case was not sufficiently meaningful and/or that Defendant was acting solely in the capacity of a debt collector when it sent the Letter. That is particularly so where, as here, the District Court was

required to construe the evidence proffered by Defendant in a light most favorable to Plaintiff. Perhaps more importantly is the fact that the District Court recognized that this Court has not drawn any "bright-line rules" for evaluating questions of meaningful attorney involvement. In the absence of any "bright-line rules," it becomes even more egregious for the District Court to have taken this question away from the jury.

## SUMMARY OF THE ARGUMENT

On this appeal, Plaintiff does not ask the Court to depart from its prior and existing precedent, holding that there are not any "bright-line rules" for evaluating questions of meaningful attorney involvement. To the contrary, Plaintiff recognizes that this will almost invariably be a fact-specific inquiry and that there is no "one size fits all" metric. To this end, Plaintiff asks this Court to find that the District Court erred in holding that no reasonable jury could find the entries in the Debtor History Report to be probative of its own information. Plaintiff similarly asks this Court to find that the District Court erred in finding that no reasonable jury could find Defendant's inability to state the amount of time spent by Salyer in reviewing the file to not raise a question of fact as to whether such review was sufficiently meaningful. That is particularly so where, as here, neither the Whitlatch nor Salyer Affidavits state the number of other matters on which Salyer worked on that day. This information is critical to the analysis, to the extent that knowing the number of

other matters on which Salyer worked on that day (including whether he made any Court appearances) is necessary to making a determination as to whether Salyer's self-serving statement that he spent the "appropriate amount of time" on the review of Plaintiff's file is plausible.

Plaintiff further asks this Court to consider whether the District Court erred in finding that Defendant was not acting solely in the capacity of a debt collector when it sent the Letter, insofar as neither the Debtor History Report nor Salyer's Affidavit show that Salyer (or any other attorney employed by Defendant) formed any opinion other than that a collection letter should be sent. The lack of meaningful involvement claim is bolstered by the fact that neither the Debtor History Report nor Salyer's Affidavit show that any attorney employed by Defendant took any further action with respect to the file after sending the Letter.

Finally, the Letter's directive that Plaintiff contact a "collections supervisor" to discuss payment options, rather than contacting the attorney who sent the Letter, strongly suggests that Defendant was acting solely as a debt collector when it sent the Letter. In such an instance, precedent from this Court requires Defendant to have included a notice disclaiming the law firm's limited role in the collection process at such time.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment *de novo. Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) citing *Back v. Hastings on Hudson Union Free Sch. Dist*., 365 F.3d 107, 122 (2d Cir. 2004). Under this standard, if the Court finds that there is any evidence in the record to show that summary judgment was improperly granted, it must reverse. *See, e.g., Victory v. Pataki,* 814 F.3d 47, 59 (2d Cir. 2016).

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Viola v. Philips Med. SYS. of N. Am*., 42 F.3d 712, 716 (2d Cir. 1994) (holding summary judgment appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law).

As the Supreme Court has stated, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). No genuinely triable factual issue

exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen'l Life Ins., Co*., 92 F.3d 81, 86 (2d Cir. 1996).

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F. Supp. 1079, 1082 (S.D.N.Y. 1993) (citing *United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986); *Western World Ins. Co. v. Stack Oil, Inc*., 922 F.2d 118, 121 (2d Cir. 1990). In performing this test, the Court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue*, 834 F.2d at 57 citing *Diebold,* 369 U.S. at 655 (other citations omitted); *Coach Leatherware Co. v. Ann Taylor, Inc*., 933 F.2d 162, 167 (2d Cir. 1991) (citation omitted).

Elsewhere stated, "[i]f as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is

improper." *Chambers v. TRM Copy Centers Corp*., 43 F.3d 29, 37 (2d Cir. 1994) citing *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

In this case, the District Court's decision must be reversed insofar as it clearly failed to adhere to the well-settled mandate that summary judgment is not to be granted when there is *any* evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party (here, Plaintiff). That is because the record evidence showed that neither Defendant nor Salyer could state the amount of time Salyer spent on his review of Plaintiff's account, or that any legal opinions were formed. That is particularly so where, as here, Salyer stated that he has reviewed "thousands of files" over the course of his career. Further, at the time that Salyer signed his Affidavit in support of Defendant's motion for summary judgment, he stated that he was no longer employed by Defendant. Therefore, the District Court should have been caused to question why this one particular file stood out in Salyer's mind, separately and apart from the thousands of other accounts he reviewed during the course of his career.

Upon making such observation, the District Court should have similarly found Salyer's self-serving statement, that he spent whatever time he deemed necessary in reviewing Plaintiff's account, to be vague and generic, such that a reasonable jury could have drawn a reasonable inference in Plaintiff's favor.

Despite the deficiencies in the Whitlatch and Salyer Affidavits, the contrary evidence in Defendant's own Debtor History Report, and the fact that the Letter directed Plaintiff to contact a non-attorney "collections supervisor," the District Court found that no reasonable jury could have found in favor of Plaintiff. This conclusion is unsupported by the record and shows that the District Court did not evaluate Defendant's motion in a light most favorable to Plaintiff. As such, the decision mandates reversal.

## **ARGUMENT**

### I.     **THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S "MEANINGFUL ATTORNEY INVOLVEMENT" CLAIM**

Count 2 of Plaintiff's Complaint alleges that no attorney employed by Defendant was meaningfully involved in the handling of her account from the time of placement to the time that the Letter was sent and, therefore, Defendant violated the applicable provisions of the FDCPA by falsely suggesting that the Letter was from an attorney when, in fact, it was not.

As this Court has held, section 1692e of the FDCPA provides generally that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (citing 15 U.S.C. § 1692e)). In addition, "[w]ithout limiting the general application of the foregoing," section 1692e proscribes sixteen

specific debt collection practices, including "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *Id*. § 1692e(3).

In this case, Plaintif argued that Defendant's "Debtor History Report" shows that that thirty-one (31) of the thirty-nine (39) tasks performed by Defendant from the time of intake to the time of the sending of the Letter were either fully automated tasks or were performed by non-attorneys. (JA78-80). While the remaining eight tasks were performed by an attorney, the record below revealed that six (6) of the remaining eight (8) tasks, though technically performed by an attorney, were ministerial in nature and that all such tasks were performed in less than one minute. The evidence then shows that the Letter was requested by Salyer, who had no other involvement in the case whatsoever, and that his two tasks were similarly performed in one minute. *Id.* at p. 3 (entries attributable to "MSS").

In support of this argument, Plaintiff cited to the decision in *Parker v. Mandarich Law Group, LLP*, No. 19-CV-6313, 2021 WL 2351177 (E.D.N.Y. June 9, 2021), wherein the same District Court held that 'some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA'." *Parker,* 2021 WL 2351177 at *16 (citing *Miller I,* 321 F.3d at 301) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("[A] letter sent on law firm letterhead, standing alone, does represent a level of

23

attorney involvement to the debtor receiving the letter")); *see also Greco*, 412 F.3d at 364.[9]

To satisfy the standard of showing meaningful attorney involvement, this Court has required that the attorney sending the letter must have "formed an opinion about how to manage the case" (*Clomon*, 988 F.2d at 1321), and "merely being told by a client that a debt is overdue is not enough." *Miller I*, 321 F.3d at 304. Critical to identifying the flaw in the District Court's conclusion, therefore, was the District Court's recognition that in *Miller I,* this Court declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case." (JA255 (citing *Miller I,* 321 F.3d at 304)). Instead, the "analysis turns on, among other things, 'precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters'." (JA255-256) (quoting *Miller I,* 321 F.3d at 307).

The Courts to have considered this issue, in following the guidance from this Court, have held that such an inquiry is often fact-specific and, as such, is rarely ripe for adjudication on summary judgment. *See, e.g., Goins v. Brandon*, 367 F. Supp.

---

[9]    Notably, in *Parker,* the District Court found a sufficient level of involvement were the Debtor History Report consisted of 15 pages and included three hundred twenty-six (326) separate entries, whereas the Debtor History Report in this case spanned only three (3) pages, with the vast majority of the tasks being fully automated or performed by non-attorneys.

2d 240, 244 (D. Conn. 2005); *Luftig v. Sokoloff*, No. 13-CV-4313 FB VVP, 2015 WL 151463, at *1 (E.D.N.Y. Jan. 13, 2015); *Hochhauser v. Grossman & Karaszewski, PLLC*, No. 19CV2468ARRRML, 2020 WL 2042390, at *6 (E.D.N.Y. Apr. 28, 2020); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Moukengeschaie,* 2016 WL 1274541; (citing *Clomon*, 988 F.2d at 1320 (the use of Jackson's letterhead and signature on the collection letters was sufficient to give the least sophisticated consumer the impression that the letters were communications from an attorney).

The Courts serving under this Circuit have explained their reasoning as being because "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the ... [collection process] escalates from the collection agency, which might not strike fear in the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 95 (E.D.N.Y. 2009) (citing *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996)); see also *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 275 (D. Conn. 2007) (same); *Krezic v. Advanced Endodontics of Buffalo, PC*, No. 1:20-CV-1166, 2021 WL 663968, at *3 (W.D.N.Y. Feb. 19, 2021).

Notwithstanding the weight of authority in Plaintiff's favor, the District Court reviewed the Affidavits of Salyer and Whitlatch, as well as the notes in the Debtor

History Report and, despite the fact that none of this evidence showed that Salyer formed any opinion other than that a collection letter should be sent, the District Court nonetheless concluded that no reasonable jury could review this evidence and find in favor of Plaintiff. This holding was clearly erroneous, insofar as the evidence demonstrated that Defendant was paying lip service to the notion of attorney meaningful involvement by having attorneys "robo-sign" (or, in this case, check boxes) letters for as many as 300 cases per day (JA127), without any recordation of the attorney's review and/or formation of a legal opinion.

By way of analogy, the New York State courts found rampant abuse of the judicial process by institutional lenders, their servicers and collection agents, who were found to have "robo-signed" tens of thousands of documents to support foreclosure actions following the burst of the housing bubble in or about 2008. See, e.g., *Onewest Bank, F.S.B. v. Drayton*, 29 Misc. 3d 1021, 1023, 910 N.Y.S.2d 857, 860 (Sup. Ct. 2010)[10]; *Deutsche Bank Nat. Tr. Co. v. Ramotar*, 30 Misc. 3d 1208(A), 958 N.Y.S.2d 645 (Sup. Ct. 2011)[11]; *2132 Presidential Assets, LLC v. Carrasquillo*,

---

[10]     Citing Stephanie Armour, "Mistakes Widespread on Foreclosures, Lawyers Say," USA Today, Sept. 27, 2010; Ariana Eunjung Cha, "OneWest Bank Employee: Not More Than 30 Seconds' to Sign Each Foreclosure Document," Washington Post, Sept. 30, 2010

[11]     "Recently, courts that routinely granted summary judgment to plaintiff financial enterprises and banks in mortgage foreclosure cases are taking a much closer look. Justice F. Dana Winslow, of Supreme Court, Nassau County, testified before the U.S. House of Representatives, on December 2, 2010, as to widespread abuses by plaintiffs in mortgage foreclosure cases. See Ellen Yan, "Taking home issues to the Hill," Newsday, Dec. 1, 2010, at A35; Ellen Yan, "LI Judge testifies in federal foreclosure hearing," Newsday, Dec. 2, 2010"

39 Misc. 3d 756, 760–61, 965 N.Y.S.2d 694, 697 (Civ. Ct. 2013) ("Affidavits which are identical to numerous other affidavits, which assert allegations without any factual support, create the suspicion of having been 'robo-signed', rather than executed by an individual based upon actual first hand personal knowledge. The courts have consistently demonstrated an intolerance for 'robo-signing.' The practice has been specifically rejected in residential foreclosure cases, consumer debt cases, no-fault, health care provider cases, and housing court non-payment eviction proceedings); *Onewest Bank, FSB v. Bernstein*, 40 Misc. 3d 1222(A), 975 N.Y.S.2d 710 (Sup. Ct. 2013) *Bank of Am., Nat. Ass'n v. Brannon*, 156 A.D.3d 1, 12, 63 N.Y.S.3d 352, 360 (2017).

It was because of the type of abuses found above which resulted in the enactment of new rules in residential foreclosure proceedings, which now require both foreclosing Plaintiffs and their counsel to sign additional affidavits attesting to the review performed prior to initiating a legal action seeking to displace a residential homeowner from his or her property.

Closest to the point sought to be illustrated herein is the decision in *IndyMac Fed. Bank, FSB v. Meisels*, 37 Misc. 3d 1206(A), 961 N.Y.S.2d 358 (Sup. Ct. 2012) There, the Court found an individual to be a "robo-signer" when she admitted to signing approximately 750 mortgage documents a week. Applying that reasoning to the case-at-bar, an attorney employed by Defendant could have authorized the

sending of 300 letters per day—or 1,500 per week—which is **twice** the amount signed by "Ms. Johnson" in *Indymac,* yet still be in compliance with Defendant's procedures and be considered to have conducted a "meaningful" review.

The foregoing is not dissimilar to the rules of court later adopted in in response to the escalating number of default judgments that were being obtained by debt buyers in the New York State Court system. To combat what the New York courts considered similar abuses, the Chief Judge announced that the Courts of the State of New York would be adopting "major reforms" to address default judgment applications in consumer credit cases.[12] The new rules were intended to "ensure a fair legal process and address documented abuses, including entry of default judgments despite insufficient or incorrect factual proof…"[13] To this end, the following rules were adopted: N.Y. Comp. Codes R. & Regs. Tit. 22, § 202.27-a[14] and N.Y. Comp. Codes R. & Regs. Tit. 22, § 208.14-a.[15] Pursuant to subsections (b) and (d), each of these rules provides that certain mandatory documentation must be provided to the Court by a debt-buyer plaintiff, when it seeks a default judgment in an action relating to a consumer credit transaction. These rules were designed to

---

[12] http://ww2.nycourts.gov/rules/ccr/index.shtml#6.

[13] *Id.*.

[14] Titled "Proof of Default Judgment in Consumer Credit Matters," applicable to consumer credit card cases *commenced* in the Supreme and County Courts.

[15] Similarly titled and *applicable* to Civil Courts within the City of New York.

insure that an entity who did not lend money to a consumer could prove its right to collect a debt which originated with another. The protections of the FDCPA serve a similar purpose.

In light of the foregoing, the District Court's decision was clearly error, to the extent that it found no reasonable jury could find in favor of Plaintiff, when Defendant's own account notes showed that the only tasks completed by Salyer took one minute of time. The decision was similarly error to the extent the Court held that no reasonable jury could question the veracity of the generic statements in the Salyer and Whitlatch Affidavits which—without support—claimed that an "appropriate amount of time" was spent on the review of Plaintiff's file, notwithstading their collective inability to quantify same.

## II. THE DISTRICT COURT ERRED IN FINDING THAT DEFENDANT WAS NOT ACTING SOLELY AS A DEBT COLLECTOR IN SENDING THE LETTER

The District Court did not give due consideration to the portion of Plaintiff's argument which alleged that Defendant was acting solely in its capacity as a debt collector when it sent the Letter to Plaintiff, so as to require a *Greco* disclaimer. Instead, the District Court summarily concluded that "[because] the Court finds that […] there was meaningful attorney involvement in the collection of Plaintiff's debt no such disclaimer was required." (JA30).

29

The District Court's holding in this regard was clearly erroneous because, as was stated above, the evidence before the Court (inclusing the Whitlatch and Salyer Affidavits, together with the Debtor History Report) served to show that Salyer (an attorney not licensed to practice in New York) did not form any opinion other than that the Letter should be sent; and that there was no attorney acitivity following the sending of such Letter. No attorney in the Firm formulated any opinion as to what Defendant's next steps would be in the event that Plaintiff did not respond to the initial dunning Letter. Further, the Letter itself instructed Plaintiff to contact Defendant's collection supervisor if she wished to discuss payment terms, but did not direct her to contact any attorney employed by the Firm should she wish to discuss any issues other than making payment.

## CONCLUSION AND PRAYER FOR RELIEF

The undisputed evidence below shows that Defendant was acting solely as a debt collector at the time it sent the Letter to Plaintiff. The evidence further left doubt as to whether attorney Salyer's review of Plaintiff's account was sufficiently meaningful, within the parameters discussed by this Court. Insofar as the District Court recognized that this Court has declined to set forth any "bright line rules" with respect to meaningful involvement, the District Court should have found that Defendant was not entitled to summary judgment, and that the questions of whether

the least sophisticated consumer would have been misled by the Letter was a question to be resolved by the jury.

In light of the foregoing, cause exists to reverse the decision of the District Court and remand with instruction that the matter be set down for trial.

Dated:      June 7, 2022

Respectfully submitted,

**SANDERS LAW GROUP**

*/s/ Craig B. Sanders*
Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Telephone: (516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [x] this brief contains 7431 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    [ ] this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman font, or

    [ ] this brief has been prepared in a monospaced typeface using _____ with _____.

    */s/ Craig B. Sanders* _____
    Craig B. Sanders, Esq.

32

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 7, 2022

**SANDERS LAW GROUP**

*/s/ Craig B. Sanders*
Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Telephone: (516) 203-7600
csanders@sanderslaw.group

*Attorneys for Plaintiff-Appellant*



**Appellate Source, Inc.**

Simplified. Appellate. Solutions.

85 West Main Street, Suite 201, Bay Shore, NY 11706
631-647-0659 – www.appellatesource.com