# 22-431

# In the United States Court of Appeals for the Second Circuit

RAIZY FELBERBAUM, individually and on behalf of all others similarly situated,

Plaintiff/Appellant,

v.

MANDARICH LAW GROUP, LLP,

Defendant/Appellee.

**BRIEF OF APPELLEE MANDARICH LAW GROUP, LLP**

**On Appeal from the United States District Court
for the Eastern District of New York**
Case No. 19-cv-4249 (KAM)(VMS), Hon. Kiyo Matsumoto

**MESSER STRICKLER BURNETTE, LTD.**
Nicole M. Strickler, Esquire
Illinois Bar No. 6298459
142 W. Station Street
Barrington, Illinois 60010
(312) 334-3469 (phone)
(312) 334-3473 (fax)
nstrickler@messerstrickler.com
*Counsel for Defendant/Appellee*

July 7, 2022

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS …………………………………………………….. i

TABLE OF AUTHORITIES …………………………………………………… ii

STATEMENT OF JURISDICTION …………………………………………… 1

STATEMENT REGARDING ORAL ARGUMENT ………………………….. 1

STATEMENT OF THE ISSUES ……………………………………………… 1

STATEMENT OF THE CASE ………………………………………………… 1

    A. Relevant Facts. ………………………………………………………... 1

    B. Procedural History. ……………………………………………………… 7

STANDARD OF REVIEW …………………………………………………… 8

SUMMARY OF THE ARGUMENT ………………………………………... 9

ARGUMENT ………………………………………………………………… 10

    I.    THE DISTRICT COURT CORRECTLY DETERMINED
           THAT MANDARICH LAW WAS MEANINGFULLY
           INVOLVED IN THE COLLECTION OF FELBERBAUM'S
           ACCOUNT. ……………………………………………………… 11

    II.    THE DISTRICT COURT CORRECTLY DETERMINED
           THAT MANDARICH LAW WAS NOT ACTING SOLELY
           AS A DEBT COLLECTOR IN SENDING THE LETTER
           SUCH THAT A DISCLAIMER WAS REQUIRED. …..……………… 22

CONCLUSION AND PRAYER FOR RELIEF …………………………… 23

CERTIFICATE OF COMPLIANCE ………………………………………….. 26

CERTIFICATE OF SERVICE ………………………………………………... 27

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Avila v. Riexinger & Assocs., LLC*,
    817 F.3d 72 (2d Cir. 2016) ………………………………………….. 11

*Benzemann v. Houslanger & Assocs., PLLC*,
    924 F.3d 73 (2d Cir. 2019) …………………………………………… 8

*Carlin v. Davidson Fink, LLP*,
    852 F.3d 207 (2d Cir. 2017) ………………………………………… 10

*Cloman v. Jackson*,
    988 F.3d 1314 (2d Cir. 1993) ………………………………………..... 10, 11

*Derosa v. CAC Fin. Corp.*,
    278 F. Supp. 3d 555 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir.
    2018) ……………………………………………………………………… 10

*DeSantis v. Computer Credit, Inc.*,
    269 F.3d 159 (2d Cir. 2001) …………………………………………….11

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ……………………………………….. 8, 9

*FTC v. Moses*,
    913 F.3d 297 (2d Cir. 2019) ……………………………………….. 8, 9

*Gisendanner v. Enhanced Recovery Co., LLC*,
    793 Fed. Appx. 5 (2d Cir. 2019) …………………………………… 11

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,
    412 F.3d 360 (2d Cir. 2005) …………………………………… 12, 22, 23

*Jackson v. Fed. Exp.*,
    766 F.3d 189 (2d Cir. 2014) ………………………………………… 22

*Kapeluschnik v. Leschack & Grodensky, P.C.*,
    1999 U.S. Dist. LEXIS 22883 (E.D.N.Y. Aug. 26, 1999) ……………...13

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003) ……………………………………….. 11, 13

*Mizrahi v. Network Recovery, Servs., Inc.*,
    1999 U.S. Dist. LEXIS 22145 (E.D.N.Y. Nov. 5, 1999) ………………… 13

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
    2016 U.S. Dist. LEXIS 43725 (E.D.N.Y. Mar. 31, 2016) ……………….. 12

*Parker v. Mandarich Law Group, LLP*,
    2021 U.S. Dist. LEXIS 108197 (E.D.N.Y. June 9, 2021) ……... 8, 16, 18, 19

*Powell v. Nat'l Bd. of Med. Exam'rs*,
    364 F.3d 79 (2d Cir. 2004) ……………………………………….. 22

*Velasquez v. United States Postal Serv.*,
    155 F. Supp. 3d 218 (E.D.N.Y. 2016) ……………………………… 10

**Statutes**

15 U.S.C. § 1692 *et seq.* ……………………………………………….. 6

15 U.S.C. § 1692e ……………………………………………….. 7, 10, 11, 22

15 U.S.C. § 1692e(3) ……………………………………………. 7, 11, 12, 16

15 U.S.C. § 1692g ………………………………………………… 7, 10

15 U.S.C. § 1692g(b) ……………………………………………… 22

**Rules**

Fed. R. Civ. P. 56(c)(1)(B) ……………………………………………….. 8

## STATEMENT OF JURISDICTION

Mandarich Law Group, LLP ("Mandarich Law") adopts Appellant Raizy Felberbaum's ("Felberbaum") Statement of Jurisdiction.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 2nd Cir. R. 34.1, Mandarich Law respectfully submits that oral argument is necessary to resolve the issues raised in this appeal.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly determined that Mandarich Law was meaningfully involved in the collection of Felberbaum's account?

2. Whether the district court correctly determined that Mandarich Law was not acting solely as a debt collector in sending the Letter such that a disclaimer was required?

## STATEMENT OF THE CASE

**A. Relevant Facts.**

Plaintiff/Appellant Felberbaum is an individual who, at all relevant times, was a citizen of the State of New York residing in Kings County, New York. *See* A-9,[1] ¶ 5; A-105, ¶ 2. Defendant/Appellee Mandarich Law is a limited liability partnership

---

[1] References to "A __" indicate the page number of the Joint Appendix filed with the Appellant's Brief.

engaged in the practice of law that regularly collects or attempts to collect debts. A-240; A-105, ¶ 1.

On March 13, 2019, Mandarich Law sent an initial collection letter (the "Letter") to Felberbaum, attempting to collect a debt in the amount of $7,329.85 that Felberbaum had incurred on her Citibank, N.A. ("Original Creditor") credit card account (hereinafter referred to as the "Account") and had not paid. A-105, ¶¶ 3-6; A-106, ¶ 14; A-116, ¶ 6; A-123-124; A-157, ¶ 13. Mandarich Law had been hired by Cavalry SPV I, LLC ("Cavalry") to recover the amount owed on the Account, which Cavalry had purchased from Citibank, N.A. A-106, ¶¶ 7-10. Cavalry had sent Mandarich Law the following documents related to the Account: (1) the Affidavit of Sale of Account by the Original Creditor; (2) the Bill of Sale and Assignment by the Original Creditor to Cavalry; (3) an exhibit to the Bill of Sale and Assignment[2]; and (4) statements for the Account rendered by the Original Creditor to Felberbaum ("Account Statements"). A-106, ¶¶ 11, 13; A-134 to A-153; A-156, ¶ 8; A-157, ¶ 11.

Prior to the Letter being sent to Felberbaum, a Mandarich Law attorney, Matthew S. Salyer (hereinafter referred to as "Attorney Salyer"), following the

---

[2] The exhibit to the Bill of Sale was redacted when produced in this case to protect the privacy of other consumers unrelated to this lawsuit as it contains personal financial information, such as social security numbers, dates of birth and financial account numbers. *See* A-156, ¶ 9.

2

Mandarich Law Attorney Meaningful Involvement Procedure,[3] reviewed all the documents in Felberbaum's file, including the Affidavit of Sale of Account by the Original Creditor, the Bill of Sale and Assignment by the Original Creditor to Cavalry and the exhibit attached thereto, and various Account Statements ranging from 2014 to 2018, when the Account was ultimately charged off. A-108, ¶ 25; A-109, ¶¶ 28-30; A-118, ¶¶ 14, 17-19. The exhibit to the Bill of Sale and Assignment contained the details of the Account, including: (1) Felberbaum's full name; (2) Felberbaum's address; (3) Felberbaum's social security number; (4) the date the Account was opened; (5) the last payment date; (6) the Original Creditor; (7) and the sale amount (i.e., the balance on the date of Cavalry's purchase of the Account). A-106, ¶ 12; A-129 to A-312. The Account Statements showed purchases, returns, charges, and interest accumulation, and the account information in the Account

---

[3] The Mandarich Law Meaningful Involvement Procedure ("Meaningful Involvement Policy" or "Policy") was implemented to ensure that an attorney of the firm has been meaningfully involved in reviewing each file placed with Mandarich Law for collection and has made a professional assessment of a debtor's delinquency. A-107, ¶ 16; A-116, ¶ 9; A-157, ¶ 16. Under the Policy, each file placed with the firm must be reviewed and approved by a firm attorney prior to commencing any collection activity or filing a lawsuit, garnishment, or default judgment against a debtor. A-107, ¶ 17; A-116, ¶ 10; A-158, ¶ 17. The criteria set forth in the Policy, was developed by Mandarich Law attorneys in their professional judgment to ensure that credible evidence exists to support a debtor's obligation on a particular debt. A-108, ¶ 23; A-158, ¶ 23. If, while reviewing file, the criteria set forth in the Policy is not met, Mandarich Law attorneys are prohibited from approving the file for demand. A-108, ¶ 22; A-158, ¶ 22.

Statements matched the account information contained in the exhibit to the Bill of Sale and Assignment. A-109, ¶ 30; A-118, ¶ 19.; A-134 to A-153.

At the time Attorney Salyer reviewed Felberbaum's Account, he had reviewed hundreds of files over the lifetime of his practice which were held by Cavalry, and thus, he was incredibly familiar with the documentation typically provided which is utilized to document sales to Cavalry. A-109, ¶ 26; A-118, ¶ 15. Furthermore, he had reviewed thousands of files over his career which are based on delinquent credit card accounts, or those sold to asset purchasers, and he was readily familiar with the different kinds of documentation associated with the incurrence of and sale of those types of accounts. A-109, ¶ 27; A-116, ¶ 5; A-118, ¶ 16.

Based upon Attorney Salyer's review of Felberbaum's Account, he made the determination that Felberbaum incurred a balance originally owed to Citibank, N.A. and that a balance was still due and owing. A-110, ¶¶ 31, 33; A-119, ¶¶ 20, 25. Attorney Salyer made the determination that Citibank, N.A. sold Felberbaum's Account to Cavalry SPV I, LLC, which was placed with Mandarich Law for collection. *Id*. Attorney Salyer found no other special circumstances on the Account which would indicate that the firm should not proceed with collection efforts. A-110, ¶ 34; A-119, ¶ 25. In other words, the Account passed the bankruptcy scrub (meaning it was not subject to a bankruptcy filing), the Account passed the deceased scrub (meaning the consumer was not deceased), there was no other indication that

4

the Account was incurred as a result of fraud or identity theft, and there was no discrepancy with the documents associated with the Account. *Id*. Attorney Salyer determined in his professional judgment as an attorney that an initial collection letter seeking the balance owed on the Account could be sent to Felberbaum. A-111, ¶ 35; A-112, ¶ 42; A-119, ¶¶ 22-23; A-120, ¶ 25; A-121, ¶¶ 32-33.

The Letter, which is the sole communication that forms the basis for Felberbaum's claims, is printed on a letterhead with the heading "Mandarich Law Group, LLP, Attorneys at Law," and provides details about Felberbaum's alleged outstanding debt, including the current creditor (Cavalry), current balance ($7,329.85), the date of last payment (11/26/2014), and the account number. A-123-124. The body of the letter states, in relevant part, as follows:

> Your account has been sold and assigned to our client, Cavalry SPV I, LLC. This office has been hired to collect the above balance that you owe our client. This is a demand for payment of your outstanding obligation.

> Please contact Collection Supervisor, John Licata, of our office should you wish to discuss payment arrangements on your account. You can reach us on our toll-free number of 833.769.2757. When contacting our office by phone or letter, please refer to file number 4176584.

> Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by us. Upon

5

> your written request within the thirty-day period we will
> provide you with the name and address of the original creditor,
> if different from the current creditor.

*Id*. The third paragraph is a notice required by the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") to be included in debt collection letters

(the "validation notice").

Below the above items, the Letter has four sentences in bold font:

> **NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**
>
> **THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
>
> **ALL CALLS TO AND FROM MANDARICH LAW GROUP, LLP MAY BE MONITORED AND/OR RECORDED FOR COMPLIANCE PURPOSES.**
>
> **NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS LICENSE NUMBER 2079588-DCA.**

*Id*. The reverse side of the Letter includes additional legal notices advising the

consumer about credit reporting and his or her rights under the FDCPA. *Id*.

The Letter is a form template and is utilized, generally, when the letter is the

first communication with a consumer. A-111, ¶ 36; A-120, ¶ 27; A-159, ¶ 26. The

form template was developed by attorneys employed by Mandarich Law. A-111, ¶

37; A-120, ¶ 28; A-159, ¶ 27. The template is formally reviewed and revised

annually by outside counsel to ensure compliance with state and federal debt

6

collection related laws, including the FDCPA. A-111, ¶ 38; A-160, ¶ 28. When Attorney Salyer approved an account, as he did with Felberbaum's Account, he did so knowing that the template would be utilized and populated with the personal information shown in JST's system. A-111, ¶ 39; A-120, ¶ 29. Having personally seen many initial collection letters generated by Mandarich on accounts, Attorney Salyer knew of no occasion where the information was populated incorrectly in an initial collection letter. *Id*. As such, it is his opinion that his reliance on the JST system was reasonable in assisting with the sending of letters. *Id*.

### B. Procedural History.

On July 23, 2019, Felberbaum filed her putative class action against Mandarich Law alleging violations of §§ 1692g and 1692e of the FDCPA. A-8 to A-23. Specifically, Felberbaum alleged that the Letter falsely represented that it was from an attorney in violation of § 1692e(3), because it was printed on firm letterhead, and, according to Felberbaum, no attorney was meaningfully involved in the handing of her account. *Id*. Felberbaum further argued that Mandarich Law was acting solely in the capacity of a debt collector when the Letter was sent, and thus, a disclaimer was required indicating the firm's limited role in the collection process. *Id*. Both parties moved for summary judgment (Dkt. Nos. 30-37) and on January 27, 2022, the district court denied Felberbaum's motion for summary judgment and granted

7

Mandarich Law's motion for summary judgment. A-239 to A-269. Felberbaum filed her appeal on March 2, 2022.

## STANDARD OF REVIEW

This Court is to review an award of summary judgment *de novo* "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in [its] favor." *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A moving party may indicate the absence of a factual dispute by "showing … that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

As a non-moving party with the burden of proof, once confronted with defendant's admissible evidence showing no genuine dispute of material fact, plaintiff must provide admissible evidence establishing a factual dispute regarding defendant's alleged violation of the FDCPA in order to withstand defendant's motion for summary judgment. *Parker v. Mandarich Law Group, LLP*, 2021 U.S. Dist. LEXIS 108197, *32 (E.D.N.Y. June 9, 2021).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (quoting *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456 (2d Cir.

8

1995)). "[C]onclusory allegations or denials" therefore "are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Id*.

## SUMMARY OF THE ARGUMENT

This appeal involves nothing more than Felberbaum's misinterpretation of both her burden of proof and of the evidence in the record. Mandarich Law was entitled to summary judgment for two main reasons. First, the district court correctly determined that Mandarich Law presented sufficient admissible evidence to demonstrate that an attorney was meaningfully involved in the collection of her Account when the Letter was sent. Felberbaum, on the other hand, who has the burden of proving that Mandarich Law violated the FDCPA, did not provide any admissible evidence that refuted Mandarich Law's argument. To the contrary, Felberbaum misconstrued Mandarich Law's records in an attempt to demonstrate only that there was the mere possibility for a lack of meaningful attorney involvement. In other words, Plaintiff could not point to any firm evidence in the record to demonstrate a lack of meaningful attorney involvement.

Second, because the district court correctly determined that there was meaningful attorney involvement in the collection of Felberbaum's Account, meaning, Mandarich Law was <u>not</u> acting *solely* as a debt collector, the Letter was not required to have the disclaimer regarding the lack of attorney involvement in the

collection of Felberbaum's Account. Accordingly, the district court's decision should be affirmed.

## ARGUMENT

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559-60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). The first two elements were not at issue on summary judgment and are not for purposes of this appeal. As such, the question is whether Mandarich Law violated a provision of the FDCPA. It is well-settled that, "[i]n a civil case, the plaintiff bears the burden of proving the elements of his claim by a preponderance of the evidence." *Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016).

Whether a collection letter is deceptive under § 1692e or meets the requirements of § 1692g is determined from the perspective of the objective "least sophisticated consumer." *Cloman v. Jackson*, 988 F.3d 1314, 1318 (2d Cir. 1993); *Carlin v. Davidson Fink, LLP*, 852 F.3d 207 (2d Cir. 2017). Relative to § 1692g, the court must determine whether "the notice fails to convey the required information 'clearly and effectively and thereby makes the least sophisticated consumer

10

uncertain' as to the meaning of the message." *DeSantis v. Computer Credit, Inc*., 269 F.3d 159, 161 (2d Cir. 2001) (internal citations omitted). As to § 1692e, a court must ask whether a collection notice is "open to more than one reasonable interpretation, a least one of which is inaccurate" as to a material statement." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016). But, "in crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." *Gisendanner v. Enhanced Recovery Co., LLC*, 793 Fed. Appx. 5 (2d Cir. 2019) (*quoting* Cloman, 988 F.2d at 1318). FDCPA liability "does not extend to every bizarre or idiosyncratic interpretation of a collection notice." *Id*. (quoting *Cloman*, 988 F.2d at 1319). "Even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Cloman*, 988 F.2d at 1319.

I.  THE DISTRICT COURT CORRECTLY DETERMINED THAT MANDARICH LAW WAS MEANINGFULLY INVOLVED IN THE COLLECTION OF FELBERBAUM'S ACCOUNT.

Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). "[S]ome degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003) (hereinafter referred to as "*Miller I*") (citing *Cloman*, 988 F.2d at 1321). "[A] letter sent on law firm

11

letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter." *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 364 (2d Cir. 2005).

The district court determined that because the Letter was printed on the law firm letterhead, under Second Circuit precedent, the Letter, represents "a level of attorney involvement to the debtor receiving the letter." *See* A-255; *see also Greco*, 412 F.3d at 364. Thus, if no attorney was meaningfully involved, then a disclaimer advising of the limited role is necessary. *Greco*, 412 F.3d at 364; *see also Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 2016 U.S. Dist. LEXIS 43725, *56 (E.D.N.Y. Mar. 31, 2016) (a collection letter on a law firm letterhead "may violate section 1692e(3) where 'the attorney or firm had not, in fact, engaged in [the] implied level of involvement.").

In the Plaintiff's Appeal Brief, the first question raised on appeal is whether the Letter, sent on the law firm letterhead, implied that it was from an attorney. *See* Doc. 31, p. 5. Likewise, the second question is whether a dunning letter sent on a law firm letterhead implies an attorney was meaningfully involved in the handing of the account. *Id*. Because these issues have already been addressed by this Court and were not otherwise contradicted by the district court, these are not issues for appeal. Rather, the first issue before this Court is whether the district court correctly

determined that a Mandarich Law attorney was meaningfully involved in the collection process of Felberbaum's Account.

In *Miller I*, this Court declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case. *See Miller*, 321 F.3d at 304. Rather, this Court noted that the analysis turns on, among other things, "precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters." *Id.* at 307.

The district court notated that courts in this Circuit have granted summary judgment when law firms have provided evidence that an attorney personally reviewed a debtor's file before a letter was sent. *See Mizrahi v. Network Recovery, Servs., Inc.*, 1999 U.S. Dist. LEXIS 22145 (E.D.N.Y. Nov. 5, 1999) (holding that an attorney was meaningfully involved because she conducted initial reviews of the debtor files and then divided them amongst herself and two paralegals for further in-depth review before letters were sent); *Kapeluschnik v. Leschack & Grodensky, P.C.*, 1999 U.S. Dist. LEXIS 22883 (E.D.N.Y. Aug. 26, 1999) (granting summary judgment because, *inter alia*, individual attorneys were assigned to "supervise the collection of information from creditors, and the sending of letters in each case" and the defendant "named a specific attorney who supervised and directed each plaintiff's case.").

Here, Mandarich Law provided evidence describing the steps that Attorney Salyer undertook in reviewing Felberbaum's Account. A-115 to A-154. Specifically, Mandarich Law provided a sworn affidavit from Attorney Salyer and a report memorializing the activities taken regarding Felberbaum's Account. A-78 to A-80; A-115 to A-121. According to the Debtor History Report, Mandarich Law performed multiple background checks on Felberbaum's Account to identify whether she had filed for bankruptcy, was imprisoned, in the military, or was deceased according to the social security index. A-78 to A-80. Attorney Salyer reviewed all files in Felberbaum's Account, including the Affidavit of Sale of Account by the Original Creditor, the Bill of Sale and Assignment by the Original Creditor to Cavalry and the exhibit attached thereto, and various Account Statements ranging from 2014 to 2018, when the Account was ultimately charged off. A-108, ¶ 25; A-109, ¶¶ 28-30; A-118, ¶¶ 14, 17-19. The exhibit to the Bill of Sale and Assignment contained the details of the Account, including: (1) Felberbaum's full name; (2) Felberbaum's address; (3) Felberbaum's social security number; (4) the date the Account was opened; (5) the last payment date; (6) the Original Creditor; (7) and the sale amount (i.e., the balance on the date of Cavalry's purchase of the Account). A-106, ¶ 12; A-129 to A-312. The Account Statements showed purchases, returns, charges, and interest accumulation, and the account information in the Account Statements matched the account information contained in the exhibit

14

to the Bill of Sale and Assignment. A-109, ¶ 30; A-118, ¶ 19.; A-134 to A-153. Based upon this review, and Attorney Salyer's experience (described *supra*) he made the professional judgment that Felberbaum owed on the Account in question, that the Account was properly sold to Calvary, and that Mandarich Law was permitted to send a collection letter. A-119 to A-120.

Attorney Salyer's review was in line with Mandarich Law's Meaningful Involvement Policy, which requires attorneys to review all original account level documentation showing the name, last four digits of the account number at charge-off, the claimed amount, an authenticated bill of sale evidencing the transfer of the debt to each owner, which must include a specific reference to the debt being collected, and an assessment by the attorney that there is not some other circumstance that would prevent collection (e.g., running of the statute of limitations, bankruptcy, identity theft, etc.). A-107 to A-108, ¶ 21; A-117, ¶ 13; A-158, ¶ 21.

Rather than confront the evidence submitted by Mandarich Law, Felberbaum tried to refute Mandarich Law's records with her own interpretations and arguments of the mere possibility that there was no meaningful attorney involvement. A-259. The district court found the Plaintiff's interpretations and arguments to be inaccurate, unsupported, and insufficient to create a material factual dispute regarding Mandarich Law's evidence. *Id*. The district court ultimately concluded

15

that the evidence proffered by Mandarich Law established no genuine dispute of material fact for trial regarding Felberbaum's § 1692e(3) claim. *Id.*; *see also Parker*, 2021 U.S. Dist. LEXIS 108197 at *38 ("At summary judgment, when confronted with evidence negating an essential element of plaintiff's claim, plaintiff must proffer <u>admissible evidence</u> showing a genuine dispute of material fact for trial as to the elements of her claim.") (emphasis added).

On appeal, Felberbaum argues that the district court erred in accepting Salyer's affidavit and rejecting Plaintiff's observations (i.e., interpretation) of Mandarich Law's records and finding that Plaintiff's interpretations were not evidence, and thus no material dispute regarding Salyer's Affidavit existed. *See* Doc. 31, p. 14. Felberbaum sets forth several instances in which she believes the record indicates there is "some" evidence from which a reasonable inference could be drawn in her favor, so that summary judgment in favor of Mandarich Law was wrong. *Id*. at pp. 2-5; 8-18; 21-30. The problem, however, is that Felberbaum's arguments lack any evidentiary support and Mandarich Law's records explain why Felberbaum's interpretations are simply wrong. Felberbaum is once again manufacturing factual disputes by proffering only speculative arguments, without proffering supporting evidence.

First, Felberbaum takes issue with the amount of time spent on the review of her Account, arguing that this is the most relevant factor in determining whether an

16

attorney has "meaningfully reviewed" a file. Doc. 31, p. 11. Felberbaum tries to argue that the district court erred in relying on Salyer's affidavit as opposed to the Debtor History Report which, according to Felberbaum, shows that Salyer only spent one (1) minute reviewing Felberbaum's Account, and that 95% of the overall tasks performed on her Account were automated or performed by non-attorneys. Doc. 31, p. 1.

Mandarich Law managing attorney, Claire Whitlatch, provided thorough testimony regarding the Debtor History Report. A-61 to A-72. For example, when questioned about Attorney Salyer's entries, which appear to Felberbaum to have taken one (1) minute, Whitlatch testified that the two line items are added in conjunction with each other. A-69 to A-70. When Attorney Salyer approved the placement of the file (the first line item), the system automatically triggered the second line item showing that the Account was ready for demand. *Id*. Thus, Whitlatch testified that the Debtor History Notes does not provide evidence of the amount of time that Attorney Salyer spent on his review of Felberbaum's Account. A-70.

The percentage of non-attorney tasks compared to attorney tasks also does not provide "evidence" that Felberbaum's Account was not meaningfully reviewed. Whitlatch testified that a majority of the entries on the Debtor History Report shows an uploading of account information. A-63 to A-68; A-78 to A-80. Thus, while it

17

may show six (6) separate entries, it is just one (1) task that triggers the six (6) separate entries. *See* A-79.[4] Again, the Debtor History Report does not show what Attorney Salyer did in his review of Felberbaum's Account. A-78 to A-80.

Interestingly, Plaintiff cites to *Parker v. Mandarich Law Group*, which involved Felberbaum's counsel representing the plaintiff against Mandarich Law. Doc. 31, pp. 23-24. Felberbaum tries to compare the cases by stating that the Debtor History Report in *Parker* consisted of 15 pages and included 326 separate entries, and that the district court found this to be sufficient level of attorney involvement. *Id*. The district court, however, did not rely on the number of tasks or length of the Debtor History Report in finding meaningful attorney involvement. *See generally Parker*, 2021 U.S. Dist. LEXIS 108197. Rather, the court was unpersuaded by the nearly all the same arguments[5] Felberbaum made in her Motion for Summary Judgment, and instead found that Mandarich Law had set forth evidence describing the steps the attorney undertook in reviewing the debtor's file. *Id*. at *45-50. In fact,

---

[4] For example, the Debtor History Report shows six (6) separate entries with the description "Merge Image Stored with a description of: Billing Statement". *See*, A-79. These entries all have the same date and time stamp because it was one task of uploading the Account statements that automatically generated the separate entries. *Id*.

[5] In *Parker*, the plaintiff argued that the record before the court confirms that Mandarich Law did not require the attorney "to keep contemporaneous time records"; does not provide the "number of cases" the attorney was working on; shows that the attorney may have "checked all the boxes" when reviewing the account; and that the attorney did not review the final letter before it was sent. *See*, 2021 U.S. Dist. LEXIS 108197 at *45.

the information in the Debtor History Report that Judge Matsumoto relied upon in *Parker* is contained in the Debtor History Report for Felberbaum. *Id*.; *see also* A-78 to A-80. For example, Parker's Debtor History Report showed that Mandarich Law performed multiple background checks on Parker's account "to identify whether Parker had filed for bankruptcy, was imprisoned, in the military, or was deceased according to the social security index." *See Parker*, 2021 U.S. Dist. LEXIS 108197 at *48; *see also* D.E. 24-1, Case No. 1:19-cv-06313-KAM-SMG. Further, the report showed that a legal assistant "reviewed the account for sufficient media and jurisdiction." *Id*. That, in conjunction with the sworn affidavit submitted, allowed Judge Matsumoto to find in favor of Mandarich Law that an attorney was meaningfully involved in the collection of Parker's account when the letter at issue was sent. *See Parker*, 2021 U.S. Dist. LEXIS 108197 at *48.

Both Attorney Salyer and Whitlatch testified that in the area of creditor's rights, it is not typical that attorneys maintain billable time records on particular files because compensation is on a contingency basis. A-110, ¶ 32; A-119, ¶ 24. As such, Mandarich Law does not require and Attorney Salyer did not keep track of the amount of time he spent reviewing individual consumer files, including Felberbaum's Account. A-110, ¶ 32; A-119, ¶ 21. Rather, Mandarich Law directs its attorneys to take the amount of time appropriate in their own professional judgment to review a file before authorizing a communication to a debtor. A-107, ¶ 19; A-158,

¶ 19. Attorney Salyer testified that, as a matter of practice, he spent the amount of time he felt was necessary to develop an appropriate professional opinion on a file in his capacity as legal counsel, which varied from account to account depending upon the documentation or other attributes of the file. A-110, ¶ 32; A-119, ¶ 21.

Second, Felberbaum argues that the Mandarich Law Policy provides evidence that its attorneys review up to 300 files per day and that could not possibly result in a meaningful review. Doc. 31, pp. 3, 26. According to Felberbaum, because the district court did not find this to be egregious, this will set a precedent for what courts will consider attorney involvement. *Id*. at p. 5. To begin, the district court did not sign off on or make any finding as it relates to that portion of Mandarich Law's Policy. Felberbaum's argument was completely speculative (and still is) that Attorney Salyer must have reviewed 300 files the day he reviewed Felberbaum's because that is what the Policy allows. Rather, Mandarich Law provided testimony from its managing attorney that attorneys are not required to review 300 files, that it was unlikely that the attorneys review that many files in a given day, and indeed, there is no evidence that Salyer did in fact review that many files that day.

Third, Felberbaum argues that Mandarich Law's JST Platform (i.e., collection software) lacked a governor on the attorney approval checklist and that theoretically, an attorney could just simply check all the boxes, and approve an account for collection, without engaging in any meaningful review. Doc. 31, pp. 3-4; 10. The

20

problem with Felberbaum's argument, again, is that this is mere speculation that this could happen, not that it did happen. Attorney Salyer's sworn affidavit, however, debunks and possibility that this occurred. He, under oath, testified[6] that he reviewed all documents in Felberbaum's Account, and formed a professional legal opinion that Felberbaum's Account was ripe for collection. A-115 to A-121. Thus, the evidence in the record demonstrates that Mandarich Law did more than merely check the boxes on the computer.

According to Felberbaum, the district court and now this Court should stop its review of the record in making the determination that there was insufficient evidence to show a meaningful attorney review. However, Mandarich Law submitted admissible evidence to support its review of Felberbaum's Account.

Ultimately, the district court correctly determined that Felberbaum failed to proffer admissible evidence showing that there was a genuine issue for trial. At the summary judgment stage, this Court has explained that where, as here, a defendant moves for summary judgment against a plaintiff who bears the burden of proving the factual elements of the claims asserted, if the "defendant-movant submits an evidentiary proofer sufficient to defeat a claim, a plaintiff who bears the burden of

---

[6] To the extent that Felberbaum challenges Salyer's truthfulness, which she does by arguing that Salyer could not have possibly remembered her Account, Felberbaum had ample opportunity to depose Mr. Salyer and to question him regarding his review of the Account. She never took the time to do so.

proof cannot win without proffering evidence sufficient to allow a trier of fact to find in its favor on each fact material to its claim(s)." *Jackson v. Fed. Exp.*, 766 F.3d 189, n.3 (2d Cir. 2014); *see also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004). Felberbaum's mere speculation is insufficient.

II.  THE DISTRICT COURT CORRECTLY DETERMINED THAT MANDARICH LAW WAS NOT ACTING SOLELY AS A DEBT COLLECTOR IN SENDING THE LETTER SUCH THAT A DISCLAIMER WAS REQUIRED.

Count One of Felberbaum's Complaint alleged that Mandarich Law violated sections 1692g(b) and 1692e of the FDCPA because the Letter, printed on the firm's letterhead, failed to effectively communicate the consumer's validation rights because it did not include an express disclaimer that the firm is acting solely in its capacity as a collection agent. A-11 to A-14. Felberbaum argues that Mandarich Law was acting solely in its capacity as a debt collector and that the disclaimer was required. Doc. 31, pp. 29-30.

In support of her argument on summary judgment, Felberbaum claims that when the Letter was sent Salyer formed no opinion other than that an initial collection letter should be sent. *Id*. at p. 30. The district court disagreed and in doing so, cited to the Second Circuit's decision in *Greco*. *See* A-267; A-258, fn. 9. "Where no attorney from the law firm that sent the collection letter 'personally reviewed the particular circumstances of [the consumer's] account,' the law firm's involvement in the collection process is limited and the law firm's collection letter to the

22

consumer therefore must include 'a clear disclaimer explaining the limited extent of [its] involvement." A-258, fn. 9 (citing *Greco*, 412 F.3d at 365). The district court determined that because Attorney Salyer reviewed the particular circumstances of Felberbaum's Account in forming the opinion that the Letter should be sent, Mandarich Law's involvement was not limited, it was not acting solely as a collection agent, and a disclaimer was not required to be included in the Letter. A-258.

One of the questions Plaintiff raises on appeal is whether a law firm acting solely in its capacity as a debt collector must include a disclaimer in a dunning letter advising the consumer of its limited role in the collection process. The district court did not state that such a disclaimer was unnecessary if the law firm is acting solely as a debt collector. Thus, this is not an issue before this Court. Rather, the issue is whether Mandarich Law was acting solely as a debt collector so as to necessitate the disclaimer. The district court thoroughly analyzed that there was an attorney meaningfully involved in the collection of Felberbaum's account, and thus Mandarich Law was not acting solely as a debt collector, no disclaimer was necessary in the Letter. *See generally* A-239 to A-269.

Felberbaum's argument on appeal is short – a total of two paragraphs and does not contain any citation to case law or the record on appeal. Doc. 31, pp. 29-30. While not specified in Felberbaum's argument, in her Summary of the Case, she

23

appears to take issue with the fact that Salyer's "opinion" was limited to sending the Letter and that the Debtor History Report shows no activity after the Letter was sent. Doc. 31, p. 16. However, any activity subsequent to the Letter being sent is irrelevant to the case at issue. Felberbaum's Complaint is limited to the attorney involvement when the Letter was sent. A-8 to A-23. Contrary to Felberbaum's argument, Salyer's affidavit states (indeed, swears) that based upon his review of the account information, he formed the professional legal opinion that Felberbaum owed on the account in question, that the account was properly sold to Calvary, and that Mandarich Law was permitted to send a collection letter. A-119 to A-120. Salyer did form an "opinion" on the account.

## CONCLUSION AND PRAYER FOR RELIEF

The district court's decision to deny Felberbaum's Motion for Summary Judgment and grant Mandarich Law's Motion for Summary Judgment was based upon clearly supported evidence in the record. The district court's decision should be affirmed.

Respectfully submitted,

**MESSER STRICKLER BURNETTE, LTD.**

By:   */s/ Nicole M. Strickler*
Nicole M. Strickler
IL Bar No. 6298459
Stephanie A. Strickler
IL Bar No. 6314089
142 W. Station Street
Barrington, IL 60010
312-334-3469
312-334-3473 (fax)
Nstrickler@messerstrickler.com
Sstrickler@messerstrickler.com
*Counsel for Defendant/Appellee Mandarich Law Group, LLP*

Date: July 7, 2022

25

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this Brief of Appellee complies with the type-volume limitations of Fed. R. App. P. 32(a)(7), in that it contains 5,806 words as calculated by the Microsoft Word word count function.

Respectfully submitted,

**MESSER STRICKLER BURNETTE, LTD.**

By:   */s/ Nicole M. Strickler*
Nicole M. Strickler

*Counsel for Defendant/Appellee Mandarich Law Group, LLP*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2022, I electronically filed this Brief of Appellee Mandarich Law Group, LLP with the Clerk of the Court via CM/ECF, which sent notice of such to all counsel of record.

Respectfully submitted,

**MESSER STRICKLER BURNETTE, LTD.**

By:  */s/ Nicole M. Strickler*
Nicole M. Strickler
IL Bar No. 6298459
142 W. Station Street
Barrington, IL 60010
312-334-3469
312-334-3473 (fax)
Nstrickler@messerstrickler.com
*Counsel for Defendant/Appellee Mandarich Law Group, LLP*

Date: July 7, 2022